IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

JOEY ROULSTON                                                      PLAINTIFF

VERSUS                                    CIVIL ACTION NO. 5:04cv199-DCB-JCS

YAZOO RIVER TOWING, INC.                                            DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the defendant's Motion for Summary Judgment [**docket entry no. 17**]. Having reviewed the Motion, briefs, applicable statutory and case law and being otherwise fully advised as to the premises, the Court finds as follows:

## FACTS AND PROCEDURAL HISTORY

The plaintiff, Joey Roulston, was employed as a seaman by the defendant, Yazoo River Towing, Inc. ("Yazoo River"). On January 27, 2003, Roulston was assigned to work on the *M/V Melvin L. King* ("*Melvin King*"), a river towboat owned and operated by Yazoo River. That day, the *Melvin King* traveled south on the Tennessee-Tombigbee River and arrived light boat[1] at the Tom Soya Grain Company facility near West Point, Mississippi. The Yazoo River vessel was to pick up a tow of eight barges at the facility, including the barge ABS 1447 B. To secure the barge for towing, Roulston had boarded the ABS 1447 B and was preparing to throw a line over to

---

[1] "Light boat" is a nautical term meaning that the towboat was traveling without any barges. See River Terms, *at* http://www.dragg.net/jbrown/rivertrm.htm.

another barge when he stepped backwards onto a manhole cover.  The cover "flipped" on Roulston, causing him to fall into the opening and severely injure his shoulder.

On October 3, 2003, Roulston filed a complaint under the Jones Act and general maritime law in the United States District Court for the Eastern District of Louisiana against Yazoo River claiming that its negligence and failure to maintain a seaworthy vessel caused his injuries.  Also included in the complaint is a claim seeking maintenance and cure from the defendant.  The case was transferred to this Court on July 26, 2004.  On October 28, 2005, the defendant filed the present motion seeking summary judgment on all claims.  The plaintiff responded on November 10, 2005 [docket entry no. 21], and asked the Court for more time to conduct discovery beyond the originally set deadlines.  The Court allowed the plaintiff until January 21, 2006, to conduct his discovery.[2]  On February 3, 2006, the plaintiff was ordered to supplement his response to the Motion for Summary Judgment within five days.  The plaintiff has offered no further pleadings to the Court; therefore, the defendant's motion shall be analyzed without the benefit of any supplemental response from the plaintiff.

---

[2] It is unclear whether or not the plaintiff ever took advantage of the discovery extension that he requested.

**DISCUSSION**

**I.   Summary Judgment Standard**

A motion for summary judgment is appropriately granted when the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party has the initial burden of identifying relevant portions of the record, including  the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A contested fact is "material" when it has the potential to change the outcome of the case.  Ginsburg 1985 Real Estate P'ship v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  An issue is "genuine" if "the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party."  Id.

If the moving party sustains its burden, the burden shifts to the nonmoving party to show with "significant probative evidence" that a genuine issue as to a material fact actually exists. Conkling v. Turner, 18 F.3d 1285, 1295 (5th Cir. 1994).  To overcome summary judgment, the nonmoving party must do more than simply rely on the pleadings or merely rest "upon conclusory allegations, improbable inferences, and unsupported speculation."

Krim v. BancTexas Group, Inc., 989 F.2d 1435, 1449 (5th Cir. 1993). The non-movant must "designate specific facts showing the existence of a genuine issue for trial." Anderson, 477 U.S. at 250. "The mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Id. at 252. Moreover, the nonmoving party must make a showing sufficient to establish the existence of an essential element of its case, an element on which it will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

In light of the facts presented by the nonmoving party, along with any undisputed facts, this Court must decide whether the moving party is entitled to judgment as a matter of law. When deciding a motion for summary judgment, the evidence submitted by the nonmoving party is presumed valid, and all reasonable inferences that may be drawn from that evidence must be drawn in favor of the party opposing summary judgment. Anderson, 477 U.S. at 255. The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence, . . . since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is improper where the court merely believes it unlikely that the non-movant will prevail at trial. National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962). By contrast, summary judgment for the moving

party is only proper when a rational jury, looking at the record as a whole, could not find for the nonmoving party. <u>Matshushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

**II.   Jones Act Negligence Claim**

The plaintiff seeks damages against Yazoo River under the Jones Act as codified in 46 U.S.C. § 688.[3] Under the Jones Act, a "seaman[4] is entitled to recovery . . . if his employer's negligence is the cause, in whole or in part, of his injury." <u>Gautreaux v. Scurlock Marine</u>, 107 F.3d 331, 335 (5th Cir. 1997) (en banc). "The elements of a maritime negligence cause of action are essentially the same as land-based negligence under the common law." <u>Withhart v. Otto Candies, LLC</u>, 431 F.3d 840, 842 (5th Cir. 2005). The standard of care required of both employers and seamen is "ordinary prudence under the circumstances." <u>Gautreaux v. Scurlock Marine, Inc.</u>, 107 F.3d 331, 338 (5th Cir. 1997). As the Fifth Circuit Court of Appeals elucidates in <u>Harrions v. Seariver Maritime, Inc.</u>, 61 Fed. Appx. 119 (5th Cir. 2003):

---

[3] The Jones Act provides as follows:

> Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common law right or remedy in cases of personal injury to railway employees shall apply. . . .

[4] There is no dispute in this case that Roulston qualifies as a "seaman" under the Act.

> This standard is designed to be very light; because seamen are considered wards of admiralty and the court, the Jones Act is *interpreted broadly for their protection. On the other hand, a Jones Act employer is not an* insurer of a seaman's safety; the mere occurrence of injury does not establish liability. . . .
>
> Because a Jones Act employer is not an insurer of its employee's safety at sea, the employer is not liable when an injury arises solely from the ordinary and normal activities or risk of seamen's work in absence of proof that the injury complained of was caused by the employer's negligence. An employer simply is not required to protect (indeed, cannot protect) its employees from all types of injuries.

However, once it has been shown that the employer breached a duty owed to the injured worker, causation is generally an easy burden for a plaintiff to carry. See Brister v. A.W.I., Inc., 946 F.2d 350, 355 (5th Cir. 1991) ("If the defendant's negligence played any part, however small, in producing the seaman's injury, it results in liability") (citing Chisholm v. Sabine Towing & Transport Co., 679 F.2d 60, 62 (5th Cir. 1982)).

In this case, Roulston alleges that his employer negligently failed to insure that his workplace was safe and that his injuries are a proximate result of that failure. A shipowner has a duty to warn his employees "in an effective way of dangers not reasonably known." Patterson v. Allseas USA, Inc., 137 Fed. Appx. 633, 637 (5th Cir. 2005) (internal quotations omitted). However, shipowners need not warn seamen of dangers that are "open and obvious." Id. Thus, Yazoo River was under a general duty to insure that the

plaintiff's workplace was free of unreasonable danger.[5]  In order to find that an employer failed to provide a reasonably safe place to work, a plaintiff must produce "evidence from which a jury can infer that the unsafe condition existed and that the owner knew of, or in the exercise of due care, should have known if it." Perry v. Morgan Guaranty Trust Co., 528 F.2d 1378, 1379 (5th Cir. 1976).

In Perry, the plaintiff brought a Jones Act negligence claim against a ship owner for personal injuries he sustained when he slipped on grease left on a stairway.  Id. at 1378-9.  Evidence submitted at trial demonstrated that other employees who had traversed the area prior to the plaintiff's accident did not notice any grease on the stairway.  The jury, however, returned a verdict for the plaintiff on his negligence claim.  On appeal, the Fifth

---

[5] In regard to Roulston's negligence claim, the Fifth Circuit has held that such claims may lie even where the alleged injury was sustained on a vessel not owned by the defendant so long as the employment duties required the employee to enter onto a third party's property:

> [The employer has] a duty to inspect the third party's property for hazards and to take precautions to protect the employee from possible defects. Although an employee may be on another's property for only a short time, and although the employer may have no supervision over the property, there is no de minimus rule. The "brevity of the sojourn" is irrelevant with respect to the duty to provide a safe place to work . . . . The employer may protect itself by simply refusing to permit its employees from going on the property. . .

Davis v. Hill Engineering, Inc., 549 F.2d 314, 329 (5th Cir. 1977), overruled on other grounds by Gautreaux, 107 F.3d 331.

Circuit Court of Appeals reversed that award, holding: "[T]here is absolutely no evidence to show how the grease got there, how long it had been there, or that there had been time enough for the shipowner, in the exercise of due care, to have learned of it and corrected the situation." Id. at 1379.  See also Weary v. Noble Drilling Corp., No. Civ.A. 04-3312, 2006 WL 146201, at *3 (E.D. La. Jan. 19, 2006) (granting summary judgment on Jones Act negligence claim where plaintiff produced no evidence of the employer's actual or constructive notice of a dangerous condition).  Thus, the reasoning employed by the court in Perry is akin to that used in a typical slip-and-fall case in land-based suits.  See, e.g., Pollet v. Sears Roebuck & Co., 46 Fed. Appx. 226, at *8 (5th Cir. 2002) (requiring a plaintiff claiming injuries from a fall caused by pooled rainwater on a merchant's shop floor to produce some evidence that the water had been present for long enough that the merchant should have discovered the dangerous condition).

     The defendant cites Perry in its Motion for Summary Judgment and argues that it is entitled to a judgment as a matter of law on the plaintiff's negligence claim because he has failed to produce any evidence that Yazoo River had notice of the dangerous condition on the barge.  This case, however, does not necessarily concern an analogous situation as that confronted by the court in Perry.  The dangerous condition at issue in Perry concerned whether or not the employer had the opportunity to find and correct a grease spill on

a stairway.  At issue in this case, however, is an alleged dangerous condition in regard to an improperly secured manhole cover.  The cause of this condition is not clear from the pleadings;[6] however, it is likely that the condition existed prior to and at the time that the plaintiff boarded the ABS 1447 B.[7]  As mentioned previously, an employer has a duty to inspect third party ships to which it sends its employee to work upon.  If, by a reasonable inspection, Yazoo River could have discovered the condition of the unsecured manhole cover, then the employer can be charged with notice of that condition.  See <u>Ribitzki v. Canmar Reading & Bates</u>, 111 F.3d 658, 664 (9th Cir. 1997) (holding that a jury issue existed with regard to an alleged dangerous condition concerning an open hatch on a third-party vessel).  The Court will, therefore, conduct an evidentiary hearing to determine whether the plaintiff will be able to present sufficient evidence on this issue

---

[6] There are any number of reasons that could create a dangerous condition in regard to a manhole cover.  For instance, was the cover simply not placed properly over the opening? Was it instead the wrong type of cover, perhaps too small, for the opening?  Was there some sort of device, such as a bolt, that was not properly fastened to secure the cover?  Was the cover damaged? Roulston testified in his deposition that the cover was "loose". Depo. of Joey Roulston, at 76.  However, there is no evidence as to how or why the cover was not secure.

[7] Of course, this may not be the case.  It is possible, for example, that Roulston or some other worker had occasion to remove the manhole cover and that it had been improperly replaced.  Again, the pleadings do not indicate whether or not the manhole cover may have been utilized or otherwise disturbed on the day in question prior to the plaintiff's accident.

to avoid summary judgment.  To maintain his Jones Act claim, the plaintiff must offer proof at the forthcoming hearing that the dangerous condition regarding the manhole cover was either created by the defendant or that it existed at a time when Yazoo River should have been able to discover the condition through a reasonable inspection of the barge.[8]

The defendant also claims that it is entitled to summary judgment because Roulston testified at his deposition that he was the only deckhand on watch at the time that his injury occurred and that it was the deckhand's job to inspect the barges being placed into the *Melvin L. King*'s tow.  See Pl. Depo., at 19.  Moreover, it is pointed out by the defendant that the plaintiff also admitted that he was aware at the time of his accident that it was "against good, safe marine practice to step on top of manhole covers[,]" and he acknowledged that rules and manuals on board the *Melvin L. King* contained warnings not to step on manhole covers.  See Pl. Depo., at 24-25.  Indeed, the Fifth Circuit has noted on several occasions that a ship owner has no duty to warn about known dangers, but

---

[8] The Court notes that even if Yazoo River could have discovered the loose manhole cover through a reasonable inspection, Roulston will not necessarily prevail on his negligence claim as an employer's burden is not so onerous under the Jones Act that it becomes an insurer against all harm suffered by its workers.  See Gautreaux, 107 F.3d at 338 (holding employers to an "ordinary prudence" standard of care).  However, "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury . . . for which damages are sought." Rogers v. Missouri Pac. R. Co., 352 U.S. 500, 506 (1957).

"particularly [so] when the one asserting the duty to warn is in a better position because of expertise to discern and appreciate the danger." Meyers v. M/V Eugenio C, 919 F.2d 1070, 1072 (5th Cir. 1990) (citing Polizzi v. M/V Zephyros II Monrovia, 860 F.2d 147 (5th Cir. 1988); Casaceli v. Martech Int'l, Inc., 774 F.2d 1322 (5th Cir. 1985)).

However, while such claims may demonstrate that Roulston's injuries were caused, at least in part, by his own negligence, they do not operate to absolve Yazoo River of all liability in the event that it was also negligent. See Miles v. Melrose, 882 F.2d 976, 984 (5th Cir. 1989) (stating that comparative negligence principles apply in Jones Act cases and prevents an "injured party from recovering for the damages sustained as a result of his own fault"); Gautreaux, 107 F.3d at 335-37 (holding that seamen are also held to a standard of ordinary prudence to avoid injury). Should the plaintiff present sufficient evidence at the forthcoming evidentiary hearing to avoid summary judgment and should he thereafter prove at trial that Yazoo River was negligent, it would be left to the jury to decide whether or not and by what quantum Roulston's own alleged negligence should reduce the defendant's liability.

Therefore, the Court will conduct an evidentiary hearing on the plaintiff's Jones Act negligence claim before ruling on the matter. At that hearing, the parties will be given an opportunity

to address the matters as detailed above. Additionally, the plaintiff has alleged that Yazoo River failed to properly train and supervise its employees. Because this claim has not been adequately briefed, the parties should also be prepared to discuss this issue.

**III.  General Maritime Unseaworthiness Claim**

Under general maritime law, a vessel owner owes a duty of seaworthiness, the duty to insure that the vessel is reasonably fit for its intended purpose, to all members of the crew who man that vessel. United New York & New Jersey Sandy Hooks Pilots Ass'n v. Halecki, 358 U.S. 613, 616 (1959). There is no question that Roulston was a protected seaman with regard to the *Melvin L. King*, the tugboat to which he was assigned. However, Roulston was not injured due to any dangerous condition on the tug. His injury, rather, occurred as a result of an alleged dangerous condition on the ABS 1447 B.

In Smith v. Harbor Towing & Fleeting, Inc., 910 F.2d 312 (5th Cir. 1990), the Fifth Circuit was presented with a similar factual scenario where the plaintiff was injured while securing a barge for towing. In that case, however, the plaintiff brought an unseaworthiness claim against the owner of the tow. The Fifth Circuit held that the owner of the tow did not owe the plaintiff a duty of seaworthiness inasmuch as his work on the barge was only transitory in nature. Id. at 313. Though the court did not

address the identical question in this case, whether a tugboat employee who is injured on a towed barge can sustain an unseaworthiness claim against the tug owner, the <u>Smith</u> opinion nonetheless provides persuasive instruction.  The Fifth Circuit noted in <u>Smith</u> that the plaintiff had a variety of remedies available to him, including "maintenance and cure and a Jones Act negligence claim against his employer as employer, an unseaworthiness claim against his employer as <u>vessel owner</u> for any injury <u>on the [vessel to which he was assigned]</u> and a negligence claim in maritime tort . . . ."  <u>Id.</u> at 315 (emphasis added).

Although the Fifth Circuit has not addressed the precise issue *sub judice*, the Eastern District of Louisiana District Court, in <u>Coakley v. Seariver Maritime, Inc.</u>, has held that "[u]nder <u>Smith</u>, the plaintiff [is] required to establish that he was a seaman <u>with regard to the vessel on which he sustained his injury</u>."  319 F. Supp. 2d at 714.  This Court finds our sister court's reasoning to be sound and adopts it as our own.  Therefore, inasmuch as the plaintiff's injuries occurred on the towed vessel and not on the tugboat to which he was assigned, Roulston must establish some special relation between Yazoo River and the ABS 1447 B, such as ownership or *pro hac vice* ownership, to sustain his unseaworthiness claim.

It is undisputed that Yazoo River did not own the barge on which the plaintiff was injured.  The plaintiff has produced no

evidence of any special relationship[9] between the owner of the barge and the defendant or any other justification why the Court should hold Yazoo River had a duty of seamanship with regard to the ABS 1447 B.[10]  Summary judgment shall be granted to the defendant on this claim.

**IV.   Maintenance and Cure Claim**

"A claim for maintenance and cure concerns the vessel owner's obligation to provide food, lodging, and medical services to a seaman injured while serving the ship." Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 441 (2001) (citing Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 527–528 (1938)).  The shipowner's duty to provide for maintenance and cure arises regardless of whether the shipowner or the injured worker was negligent or not. Calmar S.S. Corp., 303 U.S. at 527.  This obligation continues until such time as the incapacity is declared to be permanent or that the employee

---

[9] See, e.g., Martin v. Walk, Haydel & Associates, Inc., 742 F.2d 246 (5th Cir. 1984) (holding that if a defendant held a "demise charter" on a vessel under which the party would assume near complete dominion and control over the ship it could be considered as an owner for an unseaworthiness claim).

[10] The plaintiff's primary contention in requesting further discovery beyond the deadline date was so that he could attempt to establish that Yazoo River had some form of ownership over the barge.  The defendant has submitted an affidavit in which the president of Yazoo River states that the barge was not owned, chartered or operated by the company.  Because the plaintiff has failed to provide any evidence in response to this affidavit, it stands "unimpeached and uncontradicted and its credibility [is] in no manner brought into question." United States v. Johnson, 208 F.2d 729, 730 (5th Cir. 1953).

has reached maximum medical recovery. <u>Vella v. Ford Motor Co.</u>, 421 U.S. 1, 5 (1975).

Yazoo River claims that it paid maintenance to Roulston and cure to his medical providers from January 27, 2003, until the plaintiff was released by his treating physician as having reached maximum medical improvement on May 10, 2003. <u>See</u> Def. Memo. in Support of Motion for Summ. Judgment, at 2. Thus, the defendant contends that it has satisfied all of its maintenance and cure obligations to Roulston.

The plaintiff offers nothing in direct response to the defendant's argument for summary judgment on this issue. However, Roulston does allege that Yazoo River arbitrarily discontinued maintenance payments prematurely, and he claims that he continues to experience problems with his shoulder which may necessitate further medical treatment. Furthermore, the plaintiff claims to have suffered a ten percent functional impairment in his injured shoulder and that, as a result, he has been unable to return to work making as much money as he did prior to the accident. Thus, in addition to a claim for insufficient maintenance payments, Roulston requests compensation for loss of future wages. <u>See</u> Pre-Trial Order, at 8.1.

The Court is presented solely with contrary allegations on this issue. The plaintiff maintains that he has not yet obtained maximum medical recovery, that he was paid an improper maintenance

rate and that his maintenance pay was prematurely terminated. The defendant asserts just the opposite. Neither side, however, presents evidence beyond the allegations to support their claims. Therefore, the Court shall deny summary judgment on this issue.

Roulston, however, cannot recover loss of future wages under his maintenance and cure claim inasmuch as such damages are unavailable under that theory of recovery. As the Fifth Circuit noted in Bracht v. Freeport Offshore, Inc., 414 F.2d 768, 770 (5th Cir. 1969):

> [A] classic element of damages in any personal injury claim where the standard of recovery is a pecuniary loss, is the inability, or reduced ability, to earn wages. Consequently, in a seaman's action either under the Jones Act or maritime doctrine of unseaworthiness, a part of the recovery, if otherwise permissible, will be the loss of wages from the date of the injury down to the trial and, if established, the probable loss of wages in the future. . . . On the other hand, wages, in the maintenance-wages-cure sense is a very limited award. Perhaps offsetting its limited nature in terms of duration is the compensating feature that for an illness or injury suffered in the service of the ship, such wages are due as matter of right wholly without regard to unseaworthiness or negligence or both.

Id. (quoting Vickers v. Tumey, 290 F.2d 426 (5th Cir. 1961)); see also Baldassaro v. United States, 64 F.3d 206, 212 (5th Cir. 1995) (stating that the measure of recovery for maintenance claims is the rate of food and lodging of the kind that the plaintiff would have received upon the ship); Boudreaux v. United States, 280 F.3d 461, 468 (5th Cir. 2002) ("The duty to provide cure encompasses . . .

the obligation to reimburse medical expenses actually incurred [as well as] to ensure that the seaman receives the proper treatment and care"). While damages such as loss of future wages may be recovered under the plaintiff's negligence claim if it survives summary judgment, Roulston will be unable to recover those damages as compensation in his maintenance and cure claim.

## CONCLUSION

Based on the reasoning and authority set forth above, the Court finds that Yazoo River Towing's Motion for Summary Judgment shall be granted as to Joey Roulston's general maritime claim but shall be denied as to his maintenance and cure claim. A ruling as to the plaintiff's Jones Act negligence claim will be deferred until after the Court conducts an evidentiary hearing on the matter. Accordingly,

IT IS HEREBY ORDERED that the defendant's Motion for Summary Judgment [**docket entry no. 17**] shall be **GRANTED** as to the plaintiff's general maritime unseaworthiness claim, but is **DENIED** as to his maintenance and cure claim;

IT IS FURTHER ORDERED that the plaintiff's general maritime unseaworthiness claim is **DISMISSED WITH PREJUDICE;**

IT IS FURTHER ORDERED that an evidentiary hearing shall be held regarding the plaintiff's Jones Act negligence claim as described in the opinion above. The parties will be notified when this hearing is scheduled.

SO ORDERED, this the 28th day of February, 2006.

<u>S/DAVID BRAMLETTE</u>
UNITED STATES DISTRICT JUDGE